### BINDSEIL v. FEDERAL UNION SURETY CO.

(Supreme Court, Appellate Division, First Department.    March 5, 1909.)

1. CANCELLATION OF INSTRUMENTS (§ 3*) — RIGHT TO CANCELLATION—DEFECTS CURABLE BY REFORMATION.

Where the maker of an indemnity bond signed the instrument in blank, under an agreement that, when the blank was filled out, a clause limiting his liability to a specified amount would be inserted by the person to whom it was given for delivery, and by a mere mistake such clause was not inserted, either party is entitled to have the instrument reformed to express the actual agreement between the parties, and the maker is not entitled to have it declared void.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 1; Dec. Dig. § 3.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ALTERATION OF INSTRUMENTS (§ 2*)—WHAT CONSTITUTES.

 The mere failure to insert in a written agreement a provision which the parties agreed should be inserted is not a fraudulent alteration of the agreement, so as to discharge the parties from all obligation under it.

 [Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. § 1; Dec. Dig. § 2.*]

3. INDEMNITY (§ 9*)—CONSTRUCTION OF CONTRACT—EXTENT OF LIABILITY.

 Where an indemnity bond was signed in blank, with the agreement that when filled out a clause would be inserted limiting the liability of the indemnitor to a certain amount, but by mistake this clause was not inserted, the indemnitor should be held liable to the amount of his original agreement.

 [Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 16; Dec. Dig. § 9.*]

 Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Herman F. Bindseil against the Federal Union Surety Company. From a judgment for plaintiff, defendant appeals. Modified.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles S. Mackenzie, for appellant.

B. Gerson Oppenheim (Henry S. Mansfield, on the brief), for respondent.

INGRAHAM, J. The plaintiff was the owner of certain premises in the city of New York which had been leased to one Salvin, who wished to maintain an establishment for the sale of liquors on the said premises. To obtain a liquor tax certificate for that purpose it was necessary to give a bond or undertaking to the people of the state in the sum of $1,800. Salvin applied to the defendant to execute such a bond, which it agreed to do on condition that the plaintiff would indemnify the defendant for any liability that would result to it in consequence thereof, and plaintiff executed such a bond. The complaint alleges that it was the undertaking that in the indemnity bond the liability of the plaintiff was to be limited to $900; "that plaintiff herein in order to induce the defendant to sign the said bond or undertaking, and in consideration of defendant so executing and delivering the same, agreed to and with the defendant herein to indemnify the said defendant to the extent of one-half of the amount of the said bond, to wit, nine hundred dollars ($900), in the event the surety company should at any time thereafter be compelled to pay to the state of New York the whole or any part of the said above-described bond or undertaking."

It was further alleged: That pursuant to said agreement the plaintiff signed, sealed, and delivered to the defendant a certain printed paper, which, when so signed, sealed, and delivered, was a blank form of indemnity bond not showing on its face any contract or agreement of any kind whatever, having the usual or customary phraseology of an indemnity agreement, but with blank spaces left between the printed portions thereof for the purpose of writing in the name of the plaintiff and the terms and conditions of the oral; that is,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the actual understanding then or theretofore had and agreed to by and between the plaintiff and defendant. That this instrument was delivered by the plaintiff to the defendant in reliance on defendant's promise that:

"The understandings, agreements, statements, words, and phrases would be reduced to proper form and written in the blank spaces while certain printed statements, allegations, words, and phrases then appearing on the said paper or so-called indemnity agreement would be crossed out, obliterated, and erased, and the entire paper or instrument completed so as to make the same state and conform truly and strictly with the terms, conditions, agreements, and understandings then or theretofore made by and between plaintiff and defendant."

It is then alleged: That in violation of the said promise, and without the consent of the plaintiff, the defendant unlawfully and fraudulently completed the said instrument in such a way or manner that the same does not state the actual agreement, but that by the agreement as subsequently filled out the plaintiff is alleged to have promised and agreed to indemnify the defendant and save it harmless from all demands, liabilities, and expenses which the defendant might sustain or incur by reason of its having executed the bond in the state of New York without any limitation, and not limiting the extent of the plaintiff's liability to $900; that the said indemnity agreement contained other terms, conditions, and covenants which were wrongfully and fraudulently inserted therein and to which the plaintiff did not consent or agree; and the relief demanded was that the defendant surrender said so-called indemnity agreement, and that the same be canceled and discharged of record.

The defendant in its answer alleged that the plaintiff executed the bond to induce the defendant to execute the bond to the people of the state of New York under the liquor tax law, and denied the other allegations of the complaint, and as a separate defense, and by way of counterclaim, alleged: That the plaintiff had executed this bond in the sum of $1,800, by which the plaintiff agreed to indemnify and save harmless the defendant from all damage, demands, liabilities, and expenses that it might sustain or incur by reason of its having executed the bond to the state of New York as surety for Salvin; that an action had been brought by the state of New York against the defendant and Salvin to recover the penalty of said bond given by the defendant to the people of the state; that the defendant notified the plaintiff in writing of the pendency of the said action and requested the plaintiff to defend; that the defendant interposed an answer in said action and defended the same, which came on for trial, a verdict was rendered against the defendant, and a judgment for over $1,900 entered, which defendant has paid; and that the plaintiff failed and neglected to take any steps for the protection of the defendant in that action. And the answer demands judgment that the complaint be dismissed, and the defendant have judgment against the plaintiff for the amount that it had been compelled to pay. There is annexed to the answer a copy of the indemnity bond signed and executed by the plaintiff, which bond appears to have been duly executed and acknowledged before a notary public on the 20th of April, 1904.

The court found: That in the month of April, 1904, one Davis was an employé, agent, and officer of the defendant and was authorized in its behalf to receive and accept applications for bonds and undertakings under the liquor tax law, and to accept collateral security and indemnity agreements; that Salvin, a tenant of the plaintiff and in possession of the plaintiff's premises, applied to Davis for a bond or undertaking of $1,800 under the liquor tax law; that in furtherance of said application the plaintiff signed at the office of the defendant an indemnity contract wherein his liability to the defendant was limited to the sum of $900; that a few days after the plaintiff had signed the aforesaid indemnity contract Davis visited the plaintiff, stated to him that the agreement which he had previously signed had been destroyed, and requested the plaintiff to sign three other forms, which he then and there presented, promising and agreeing that they would be filled out as were the originals, particularly as to the restriction of the plaintiff's liability to $900; that, relying upon Davis' representations and stipulations, the plaintiff signed the said three other blank forms; that subsequently there was recorded an agreement whereby the plaintiff agreed to indemnify the defendant in the sum of $1,800; and that said agreement does not express the true agreement of indemnity made between the plaintiff and defendant. And as a conclusion of law that the agreement as recorded does not accord with and does not express the true agreement of indemnity made between the plaintiff and defendant, said indemnity agreement is void and of no legal effect, and imposes no obligation upon the defendant, and directing judgment canceling the same. From the judgment entered thereon, the defendant appeals.

Upon the trial Davis was called by the plaintiff, and testified: That he had been an agent for the defendant, but had terminated his connection with it; that the plaintiff signed this indemnity instrument in blank in consequence of a statement of the witness that he or somebody else had spoiled the original instrument; that the plaintiff's son had objected to his signing an instrument in blank, when the plaintiff said that he knew Davis, and if Davis said it was all right he knew it was all right and would sign the instruments; that Davis said it was all right, and Davis handed the plaintiff a stipulation purporting to be signed by Davis, which stipulated that the indemnity agreement should be binding only for half the amount of the bond, or $900; that there was no notary present and no acknowledgment of the instrument; that the original indemnity instrument had been destroyed, and he had obtained the indemnity instrument signed in blank to take its place; that after the instrument was signed he took it to the office and asked that it be filled in, instructing the person to whom he gave it to limit the liability of the plaintiff to $900; that the instrument as actually filled out was the same as the original instrument, with the exception that the limitation was not inserted; that subsequently the witness had the instrument recorded without examining it.

The agreement between the defendant and the plaintiff as to this indemnity bond was solely between Davis and the plaintiff. There is no evidence that any other officer of the company had any knowledge

of the terms of that agreement. By signing the instrument in blank the plaintiff authorized Davis to fill in the blanks in accordance with their actual agreement, and Davis undertook to carry out his agreement and in the instrument restrict the plaintiff's liability to one-half the amount of the bond given to the people of the state. Davis, to carry out that understanding, gave the instrument to one of the employés of the company to have the blanks filled in and gave him directions that this understanding with the plaintiff should be carried out. For some reason not explained the limitation provision was not inserted. There is no evidence, however, that the failure to carry out that understanding was intentional or fraudulent, or that it was omitted except by mistake. Davis, whose testimony in relation to this agreement was called out by the plaintiff on cross-examination expressly negatived any intention to defraud the plaintiff. The court did not find that there was any fraud or intent to fasten upon the plaintiff a liability in excess of that agreed to between himself and Davis, and such a finding, if made, would have been without evidence to support it. The question is therefore presented as to whether, where one party to a written instrument of this character signed it in blank with the understanding that a clause limiting his liability should be inserted, and authorizing the person with whom he had been dealing to fill up the agreement so as to express the contract actually made, and such an instrument is filled up, not in accordance with the actual agreement, the instrument is actually void, or whether the obligor is liable for the amount that by the agreement was actually due.

It seems to me clear that either party to the instrument would be entitled to have it reformed so as to express the actual agreement of the parties. The plaintiff, however, insists that, where such a mistake is made, not only is the instrument as filled out absolutely void, but that the actual agreement between the parties is also void. There is here no dispute but that this plaintiff did agree to indemnify the defendant for one-half of the liability that should be imposed upon it by reason of its executing to the people of the state the bond to enable the plaintiff's tenant to obtain a liquor tax certificate and authority to sell liquors upon the plaintiff's premises which had been leased to the tenant. The plaintiff signed an agreement to that effect, and when that agreement was destroyed he signed what he understood to be another agreement to take the place of the one destroyed, and which was to be to the same effect, and agreed that this obligation should be a lien upon his property. There was no fraud or mistake in the making of the original agreement of indemnity. Both the plaintiff and Davis understood what obligation the plaintiff assumed, and it was the intention of both parties to express that agreement in the writings that were subsequently executed. The original agreement having been destroyed, the plaintiff executed an instrument which was to contain the same terms and which was to express the original understanding of the parties. The execution of that instrument did not in any way destroy the binding obligation of the plaintiff to fulfill his agreement with the defendant upon which the defendant had executed a bond to the people of the state.

The principle relied on by the plaintiff that, by the execution of a new agreement covering the same subject-matter as the former agreement, the new agreement takes the place of the old, does not affect this question. That principle is based upon the intention of the parties by which the rights and obligations of the parties are to be expressed by the writing as finally executed, and undoubtedly that would be so in the present case. The rights of the parties would be determined by the provisions of the final written instrument, which in this case was the new indemnity agreement, and which is the one now under consideration.

The plaintiff then claims that a fraudulent alteration of a written instrument by one of the parties discharges the other from all liability under it. Assuming that this would be so if there had been a fraudulent alteration of this agreement, the difficulty is that there was no such fraudulent alteration. The written instrument was never altered. It remains to-day in the same condition in which it was in when executed, except that the blanks have been filled which the parties understood that Davis would fill in, but for some reason, apparently by mistake, so far as there is any evidence in relation to it, the clause limiting the plaintiff's liability was not inserted. There is nothing more than a mistake in the preparation of the instrument by the omission to insert a clause that the parties agreed should be inserted, and which would entitle either party to a reformation of the instrument to express the agreement actually made. A failure to insert in a written agreement a provision which the parties agreed should be inserted has never been held to be a fraudulent alteration of an agreement which discharged all the parties to it from any obligation under it. From the findings of fact and the undisputed evidence, it seems to me that all the relief the plaintiff was entitled to was a reformation of the contract by inserting in the written instrument as executed a clause limiting the liability of the plaintiff to one-half of the penal obligation of the bond, and to the extent of such one-half the plaintiff was liable.

There is then presented the question as to the extent of the plaintiff's liability. The court found that the plaintiff had executed in triplicate an indemnity agreement which was one of the regular printed forms of indemnity used by the defendant, similar in form to the defendant's Exhibit B, which was the agreement as recorded with some printed words stricken therefrom and some of the blank spaces filled in in typewriting and ink. Just what printed words in this written agreement had been stricken therefrom is not found and does not appear from the evidence. The plaintiff testified that in the original agreement, at the end of the ninth clause, there was written in typewriting that this was to cover one-half of the bond, $900, and Davis expressly testifies that the original instrument which was destroyed was in the exact form of the instrument as subsequently recorded, with the exception of this limitation of liability to $900. I think upon this testimony the liability of the plaintiff was limited to $900 and interest from the commencement of the action against the defendant by the people of the state of New York. Upon the finding of the court and

the undisputed testimony the defendant was therefore entitled to judgment against the plaintiff for $900 and interest.

The judgment appealed from should therefore be modified by reforming the instrument so as to correctly express the real contract made between the parties by inserting a clause limiting the plaintiff's liability to $900 and giving judgment for the defendant against the plaintiff on defendant's counterclaim for $900, with interest from the 16th day of May, 1905, without costs in this court or in the court below.

McLAUGHLIN, HOUGHTON, and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). The plaintiff prayed for the cancellation of the bond, and the defendant pleaded, in effect, that the bond was a valid instrument and was enforceable for the full amount thereof, for which a counterclaim was interposed. Neither party has demanded the reformation of the bond, and I am of opinion that it is not competent for this court, on appeal, to grant relief which neither party demanded by his pleading or upon the trial. On the facts found, the plaintiff was not entitled to have the instrument canceled, and the defendant was not entitled to its counterclaim. I agree that the facts point toward the rights of the parties being as indicated in the prevailing opinion, but I think the proper procedure would be to dismiss the complaint on the facts found and leave it for the plaintiff to bring an appropriate action for the reformation of the bond, or for the defendant to bring an action for the reformation and the enforcement of the bond.